**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **ALICE A. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:09-0697** |
| | ) | |
| **AMBER NELSON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following Motions: (1) The United States' "Motion to Dismiss Defendants Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship and Substitute the United States" (Document No. 20.), filed on February 16, 2012; (2) The United States' "Motion to Dismiss for Failure to State a Claim" (Document No. 23.), also filed on February 16, 2012; (3) The United States' "Motion to Dismiss James Blankenship and/or for Summary Judgment" (Document No. 29.), filed on April 24, 2012; and (4) "Defendants Nelson, Lowe, Rehberg, and Renick's Motion to Dismiss and/or for Summary Judgment" (Document No. 31.), filed on April 24, 2012. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States and Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States and Defendants in moving to dismiss. (Document Nos. 24 and 33.) Plaintiff has filed a Response to the United States and Defendants' Motions. (Document Nos. 34.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the United States' "Motion to Dismiss Defendants Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe

and James Allen Blankenship and Substitute the United States" (Document No. 20.), grant the United States' "Motion to Dismiss for Failure to State a Claim" (Document No. 23.), grant the United States' "Motion to Dismiss James Blankenship and/or for Summary Judgment" (Document No. 29.), and grant "Defendants Nelson, Lowe, Rehberg, and Renick's Motion to Dismiss and/or for Summary Judgment" (Document No. 31.).

## PROCEDURAL HISTORY

Plaintiff filed a Complaint on June 18, 2009, naming the following as defendants: (1) Amber Nelson, Warden; (2) Alice Lowe, Assistant Warden; (3) Mr. Blankenship, Health Services Administrator; (4) Dr. Neal Rehberg, Osteopath; (5) D. Renick, Physician Assistant; and (6) Billy McMillion, RN Contract Staff. (Document No. 1, pp. 1, 4, 8, 11, 15, 18, 22, 25, 29, 32, 36, and 39.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference in providing treatment for her "extremely allergic reaction."[1] (Document Nos. 1 and 1-1.) During her incarceration at FPC Alderson, Plaintiff claims that she suffered an extremely allergic reaction while raking the grounds on April 16, 2008. Plaintiff alleges that she reported to sick-call the following day "due to the spread and discomfort of the rash." Plaintiff contends that "HSU was extremely nonchalant even though my rash was clearly abnormal for an allergic reaction." Plaintiff complains that without doing "a thorough medical investigation," medical staff prescribed two topical creams (Clotrimazone Cream and Bethamethasone DIP) to be applied three times a day for two weeks and assigned two days idle. Plaintiff alleges that she "had an immediate allergic reaction to the prescribed topical creams" resulting in her skin being severely burned. Plaintiff returned to Health Services on April 21, 2008,

---

[1]  Because Petitioner is acting *pro se*, the documents which she has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

"to show the adverse reaction [her] body had to their prescriptions" and complaining of "extreme pain." Plaintiff complains that "[i]nstead of giving me a thorough examination which would have included a blood test and a skin graft, they just made a 'gesstimation,' telling me I had a fungus rash instead of a bacterial rash." Plaintiff alleges that medical staff instructed her to continue using the same creams and placed her on idle for an additional four days.

On April 25, 2008, Plaintiff again reported to Health Services and was evaluated by Dr. Rehberg. Dr. Rehberg prescribed another topical cream, Selenium Sulfide, which he allegedly instructed Plaintiff to use concurrently with the other two creams. Plaintiff alleges that even though she informed Dr. Rehberg of her concerns about using "the new prescription in conjunction with the creams that burned [her] body," Dr. Rehberg continued to instruct her to use the creams concurrently.

On April 28, 2008, Plaintiff "sought the help of [her] Unit Manager, Ms. Altizer, and Lieutenant Landon." Plaintiff states that she showed Ms. Altizer and Lieutenant Landon the burns that were covering a large percentage of her body. Plaintiff contends that she "had third degree burns on [her] thighs, knees, back of legs, buttocks, back, neck, chest and arms." Ms. Altizer and Lieutenant Landon allegedly sent Plaintiff back to Health Services on April 29, 2008, where Plaintiff was evaluated by Dr. Blankenship. Plaintiff states that "[e]ven though [her] flesh was red and the meat was hanging from [her] body, " Dr. Blankenship "told [her] the cream was supposed to burn."

On May 2, 2008, Plaintiff reported her lack of proper medical treatment to Assistant Warden Alice Lowe. Warden Lowe allegedly conducted a meeting with Plaintiff and Dr. Blankenship. Plaintiff states that Dr. Blankenship "continued insisting the cream was supposed to burn because he verbally diagnosed [her] with having a fungus infection." After the meeting, Plaintiff was instructed to return to Health Services "to see the same nurse [she] had originally gone to on April 17, 2008, [because] the doctor wanted to find out from the nurse if [Plaintiff's] condition had gotten worse

3

since her first visit." Plaintiff claims that the nurse "was in utter shock, stating [her] body looked 1,000 times worse than before." Dr. Blankenship allegedly instructed Plaintiff to continue using the Clotrimazole cream, but discontinue use of the Selenium Sulfide and Bethamethasone Dipropionate. Plaintiff claims that Defendants have been unable to properly diagnose and treat her "worsening condition" and refuse to provide her with "outside medical care." Plaintiff requests monetary relief.

By Order entered on September 23, 2011, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees. (Document No. 11.) In screening Plaintiff's Complaint, the undersigned determined that Plaintiff had potentially stated a claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and under the Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.* (Id.)

On February 16, 2012, the United States filed a "Motion to Dismiss Defendants Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship and Substitute the United States" and Memorandum of Law in Support. (Document Nos. 20 and 21.) The United States requests that the Court (1) "dismiss Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship from the complaint based upon the Certification by the United States Attorney that they were acting within the scope of their office or employment at the time of the incident out of which the claim arose;" and (2) "substitute the United States in their place as the defendant." (Document No. 20, pp. 1 - 2.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 20-1.)

Also on February 16, 2012, the United States filed a "Motion to Dismiss for Failure to State a Claim." (Document Nos. 23.) The United States argues that Plaintiff's Complaint should be dismissed because Plaintiff has failed to file a screening certificate of merit as required by the

4

Medical Professional Liability Act [MPLA]. (Id.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 17, 2012, advising her of the right to file a response to the United States' "Motion to Dismiss Defendants Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship and Substitute the United States" (Document No. 20.) and "Motion to Dismiss for Failure to State a Claim" (Document Nos. 23.). (Document No. 24.)

On April 24, 2012, the United States filed a "Motion to Dismiss James Blankenship and/or for Summary Judgment" and Memorandum in Support. (Document Nos. 29 - 30.) The United States argues that any Bivens claim against Defendant Blankenship should be dismissed because (1) "James Blankenship was at all relevant times to the complaint a Commissioned Officer of the Public Health Service [PHS];" and (2) "Commissioned officers in the PHS are, by law, immune from any Bivens liability." (Document No. 29, pp. 1 - 2.)

Also on April 24, 2012, Defendants Nelson, Lowe, Rehberg, and Renick filed a Motion to Dismiss and/or for Summary Judgment and Memorandum in Support. (Document Nos. 31 and 32.) Defendants contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "Plaintiff cannot establish a claim of deliberate indifference to her medical condition" (Document No. 32, pp. 3 - 12.); (2) "The lack of specific allegations against Defendants Nelson and Renick require dismissal" (Id., p. 12.); (3) "Defendants are entitled to qualified immunity" (Id., pp. 13 - 19.); and (4) "Plaintiff's constitutional claims against the Defendants in their official capacities are barred by sovereign immunity" (Id., pp. 19 - 20.). As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 31-1, pp. 1 - 2.); (2) The Declaration of Neal Rehberg, D.O. (Id., pp. 3 - 5.); (3) A copy of Plaintiff's medical records (Id., pp. 6 - 87.); and (4) The Declaration of Dana Renick, PA-C (Id., p. 88.).

5

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 25, 2012, advising her of the right to file a response to the United States' "Motion to Dismiss James Blankenship and/or for Summary Judgment" (Document No. 29.) and "Defendants Nelson, Lowe, Rehberg, and Renick's Motion to Dismiss and/or Summary Judgment" (Document No. 31.). (Document No. 33.)

On April 30, 2012, Plaintiff filed her "Response to Defendants' Motion to Dismiss." (Document No. 34.) Plaintiff contends that her Complaint should not be dismissed because she "has a cognizable claim." (<u>Id.</u>, pp. 3 - 4.) Plaintiff argues that she has "permanent injury (burn marks) throughout her entire body as a direct result of the medical treatment decisions of the FPC Medical Staff. The medical staff acted at the behest of the Warden, and the FBOP." (<u>Id.</u>, p. 3.) Plaintiff argues that "from the records that accompany Ms. Williams' pleadings, it is clearly demonstrated that prison officials acted with reckless disregard to Ms. Williams' safety, health, and overall well being." (<u>Id.</u>) Next, Plaintiff states that <u>Bivens</u> provides her "a remedy to seek redress from the clearly negligent behavior." (<u>Id.</u>) Specifically, Plaintiff states that "collectively the defendants were negligent in failing to obtain requisite medication for her condition and were further negligent by refusing Ms. Williams' many requests to see an outside hospital specialist to correct the problem." (<u>Id.</u>) Third, Plaintiff argues that "dismissal at this early stage is unwarranted" because the government "admits that Ms. Williams' allegations of an extreme allergic reaction due to her job assignment and the treatment will require expert medical testimony on the standard of care for treating plaintiff's symptoms and the side effects of her treatment." (<u>Id.</u>) Finally, Plaintiff states that the Court must be "indulgent of [her] pleading limitations" and "the responsibility to properly set forth a cognizable claim is the burden of the defendant." (<u>Id.</u>, p. 4.)

On May 7, 2012, Defendants' filed their Reply to Plaintiff's Response. (Document No. 35.)

First, Defendants state that "[t]he sum and substance of the response is that plaintiff is claiming that the individually named defendants were negligent." (<u>Id.</u>, p. 1.) Next, Defendants noted that "Plaintiff's response fails to defeat the United States Attorney's Certification that the individual defendants were acting within the scope of their employment." (<u>Id.</u>) Finally, Defendants state that "Plaintiff recognizes that she needs an expert witness to pursue her medical negligence claim, but fails to understand that she must have an opinion from an expert prior to filing suit." (<u>Id.</u>, p. 2.) Defendants, therefore, contend that Plaintiff's FTCA claim must be dismissed "without prejudice for plaintiff's failure to comply with the screening certificate of merit provisions of the MPLA." (<u>Id.</u>)

## FACTUAL HISTORY

Plaintiff complains that Defendants failed to provide her with adequate medical treatment from April, 2008, through May, 2008. (Document No. 1-1.) On April 17, 2008, Plaintiff reported to sick-call complaining that "I have a very bad rash on my chest and neck that is burning terribly right now and is red." (Document No. 31-1, p. 35.) Plaintiff was evaluated by a Defendant McMillion and a Nurse Practitioner, who noted the following: "Inmate has rash under both breasts and on side of neck with redness and welts. Inmate states extreme itching. No difficulty swallowing, but complains of burning at affected sites." (<u>Id.</u>) Plaintiff was diagnosed with candidiasis and prescribed Clotrimazole cream and Betamethasone cream to apply to affected areas twice a day for two weeks. (<u>Id.</u>, p. 36.) Plaintiff was instructed to follow-up as needed. (<u>Id.</u>)

Plaintiff returned to sick-call on April 21, 2008, complaining of "infection all over my body." (<u>Id.</u>, p. 33.) Plaintiff was evaluated by Defendant McMillion and a Physician Assistant, who noted as follows: "Inmate complains of burning/itching that has spread to back since 4-17-08 . . . chest and neck has improved but now has redness in right and left flank and mid-back. Complains of itching and burning. No skin breakdown noted at this time." (<u>Id.</u>) The Plaintiff was diagnosed with

"dermatitis-candidial" and given a Benadryl injection. (Id., p. 34.) Plaintiff was also prescribed Lotrisone cream and Betamethasone cream and provided a three-day idle. (Id.)

Plaintiff reported to sick-call on April 28, 2008, complaining that a "bacterial infection had an allergic reaction all over my whole body and is burning and itching like crazy." (Id., p. 31.) Plaintiff was examined by Defendant McMillion, who noted that the rash had spread and Plaintiff complained that prior medication had provided no relief. (Id.) Plaintiff was evaluated by Defendant Rehberg on the same day. (Id., p. 32.) Defendant Rehberg diagnosed Plaintiff with tinaecorporis (a fungal infection) and prescribed selenium sulfide lotion to be used every other day for two weeks. (Id.) Plaintiff was given a 10-day medical convalescence on April 30, 2008. (Id., p. 30.) It was noted that Plaintiff worked in landscaping and her rash was worsened by sweating. (Id.)

On May 1, 2008, Plaintiff complained of a "rash to legs with pain as a 7 on a scale to 10." (Id., p. 28.) Plaintiff was evaluated by a registered nurse, who noted there was excoriation, a deeper disruption of the skin caused by irritation, and swelling to the inner thighs. (Id.) There were no signs of infection or drainage. (Id.) Plaintiff was provided Telfa (non-adherent sterile dressing) to protect the skin and instructed to return to sick-call the next day. (Id.)

Plaintiff was evaluated by Defendant Rehberg on May 2, 2008. (Id., p. 29.) Defendant Rehberg noted that Plaintiff's "skin looks better," but there were still excoriation to inner thighs. (Id.) Defendant Rehberg further noted that there was no pain or itching with the dressing applied. (Id.) Defendant Rehberg instructed Plaintiff that the treatment plan was to apply dressing after absorption of cream, change the dressing daily, and keep skin-to-skin contact to a minimum. (Id.)

On May 5, 2008, Plaintiff reported to sick-call complaining that "I'm out of my medication" and "I'm taking the wrong medication instead." (Id., p. 27.) Plaintiff noted that her pain was a level 10 on a scale to 10. (Id.) On May 6, 2008, Defendant Renick made an administrative note for Plaintiff

8

to stop the Betamethasone. (Id., p. 26.) Defendant Rehberg evaluated Plaintiff on May 9, 2008, noting that her condition had improved with treatment. (Id.) Specifically, he noted that most areas had improved and ordered one more week of treatment. (Id.) Plaintiff was instructed to continue only with the daily dressings. (Id.)

On May 29, 2008, Plaintiff was seen by a nurse practitioner for a follow-up appointment. (Id., p. 24.) It was noted that Plaintiff's "skin has improved significantly," but she still complains of itching under her breasts and on her legs. (Id.) It was noted that the skin in the above areas was "darkened, shiny, and moist." (Id.) No open wounds were noted. (Id.) Plaintiff was diagnosed with candidiasis and prescribed Clotrimazole cream. (Id.) Plaintiff was instructed to "keep the areas dry, frequently change her bra, washing bra frequently, [and] dry areas with hair dryer after bathing." (Id.)

On June 24, 2008, Plaintiff was seen for a Chronic Care Clinic. (Id., pp. 20 - 21.) It was noted that Plaintiff's rash had resolved. (Id., p. 20.) Plaintiff chronic care diagnoses were colitis, anxiety, chronic knee pain, osteopenia, and anemia. (Id., p. 21.) Plaintiff made no further complaints regarding a rash or skin issues. (Id., p. 5.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

1.      **Insufficient Service of Process.**

Defendants argue that no service has been made upon the United States Attorney, Alice Lowe, and James Blankenship as required by Rule 4 of the Federal Rules of Civil Procedure. (Document No. 20, p. 1 and 32, p. 2.) Defendants further note that Defendant Billy McMillion has not been served with process. (Document No. 32, p. 2.)[2]

When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D.W.Va. 2009). When it is evident that a party has failed to accomplish service of process pursuant to Rule 4, dismissal is in order. Rule of Federal Rule of Civil Procedure 4(i)(1) and (3) state how a party must serve a Summons and Complaint upon the Untied States, its agencies, corporations, officers or employees as follows:

> (1)  **United States.** To serve the United States, a party must:
>     (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought – or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk – or
>        (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>     (B)  send a copy of each by registered or certified mail to that Attorney General of the United States at Washington, D.C.; and
>     (C)  if the action challenges an order of the non-party agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.
>
> (2)  **Agency; Corporation; Officer or Employee Sued in an Official Capacity.** To serve a United States agency or corporation, or a United States officer or

---

[2]  Although Plaintiff is proceeding *in forma pauperis*, the Court finds that it is her responsibility to ensure proper service of process. *See Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991)(*in forma pauperis* plaintiff must request service of summons and complaint by court officer in order for officer to be responsible for effecting service.) By Order dated September 23, 2011, the undersigned directed Plaintiff to serve the Summonses and Complaint upon Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Document No. 11.)

employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

(3)     **Officer or Employee Sued Individually.** To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Federal Rule of Civil Procedure 4(e)[3] states a follows:

(e)     **Servicing an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual - - other than a minor, an incompetent person, or a person whose waiver has been filed - - may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Federal Rule of Civil Procedure 4(m) requires that service of a summons and complaint be made upon a defendant within 120 days of the filing of the complaint. Dismissal of the complaint without prejudice is required upon the plaintiff's failure to accomplish service of process within 120 days unless the plaintiff can show good cause why service was not made within that period. Additionally,

---

[3] Rule 4(f) provides for service of an individual in a foreign country and Rule 4(g) provides for service of a minor or incompetent person.

12

when the United States, its agencies, officers and employees are defendants, Federal Rule of Civil Procedure 4(i)(4) allows for an extension of time to complete service of process when a party has failed to do so in certain respects as follows:

> The Court must allow a party a reasonable time to cure its failure to:
>
> > (A)    serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or
> >
> > (B)    serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

By Order dated September 23, 2011, the Court granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to serve the Summonses and Complaint upon Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Document No. 11.) On October 27, 2011, Plaintiff filed a letter-form Motion for Extension of Time to Execute Service of Process. (Document No. 14.) By Order entered on October 27, 2011, the undersigned granted Plaintiff's Motion and directed that "Plaintiff shall execute service of process upon the named Defendants by February 10, 2012." (Document No. 15.) Based upon a review of the docket sheet, the Court finds that Plaintiff's extension of time for serving process expired more than three months ago and Plaintiff has not accomplished service of process upon Defendants Lowe, Blankenship, and McMillion. Additionally, the record is void of any evidence that Plaintiff complied with Federal Rule of Civil Procedure 4(i) in serving the United States. The Court notes that Plaintiff must serve the United States when suing a United States officer or employee in their individual or official capacities. Further, it does not appear that Plaintiff should be allowed a reasonable time to cure her failure to serve Defendants as the Rules require because the conditions specified in Rule 4(i)(4)(A) and (B)

have not been met.[4] Accordingly, Plaintiff's claims against Defendants Lowe, Blankenship, and McMillion should be dismissed. Notwithstanding the above finding, the undersigned will consider the merits of Plaintiff's claims.

**2.      FTCA Claim:**

   **A.      The United States as a Party.**

In its Motion, the United States argues that Defendants Nelson, Rehberg, Renick, Lowe, and Blankenship should be dismissed and the United States substituted as the Defendant. (Document Nos. 20 and 21.) In support, the United States Attorney filed a "Certification" stating that Defendants "Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship, were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose." (Document No. 20-1.) In her Response, Plaintiff does not dispute that Defendants Nelson, Rehberg, Lowe, and Blankenship were acting within the scope of their employment. (Document No. 34.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive

---

   [4] Additionally, the Court notes that Plaintiff was granted an extension of time that allowed her more than adequate time to execute service of process upon Defendants.

damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that her action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

The United States attaches a "Certification" by the United States Attorney stating that Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship, were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose." (Document No. 20-1.) A United States Attorney's certification "is conclusive unless challenged."[5] Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question de novo. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific

---

[5] Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

15

evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying her burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the State where the conduct occurred. Id. at 1156 (citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

Plaintiff's Response does not challenge the United States' "Certification."[6] As stated above, a United States Attorney's certification "is conclusive unless challenged." The undersigned, therefore, recommends that the United States' "Motion to Dismiss Defendants Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship and Substitute the United States" (Document No. 20.) be granted as to Plaintiff's FTCA claim.

**B.** **Failure to satisfy the requirements of the MPLA.**

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805

---

[6] Plaintiff appears to agree that Defendants were acting within the scope of their employment. In Response, Plaintiff contends she "has stated a valid cause of action against the United States for medical negligence, medical malpractice, medical misdiagnosis, medical deliberate indifference, and cruel and unusual punishment, by government employees acting within the scope of their employment here in the State of West Virginia." (Document No. 49, pp. 26 - 28.)

(1963). As stated above, the FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[7] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in

---

[7] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the

Federal Court. <u>Stanley v. United States</u>, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); <u>also see</u>

<u>Starns v. United States</u>, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice

liability cap applies to claims brought against the United States under the FTCA). West Virginia

Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the

cause of action is based upon a well-established legal theory of liability which does not require expert

testimony supporting a breach of the applicable standard of care."

 Plaintiff alleges that federal employees at FCI Beckley acted with medical negligence in

providing medical treatment. In its Motion to Dismiss, the United States contends that Plaintiff's

claim should be dismissed because she failed to timely and properly file a notice of claim and a

screening certificate of merit pursuant to the MPLA. (Document No. 23.) In Response, Plaintiff

argues it is premature to dismiss her claim because she "needs proper discovery and an expert opinion

(whether in the form of testimony or affidavit) to clearly state her claim." (Document No. 34, p. 4.)

 Plaintiff concedes that expert testimony is needed and she did not file a Screening Certificate

of Merit. Plaintiff's argument that it is premature to dismiss her claim, is without merit. As stated

above, West Virginia Code § 55-7B-6 is mandatory prior to filing suit in Federal Court. The

undersigned, therefore, recommends that the United States' "Motion to Dismiss for Failure to State

a Claim" (Document No. 23.) be granted as to Plaintiff's FTCA claim.[8]

---

expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

[8] Notwithstanding the foregoing, the undersigned will briefly consider whether Plaintiff is excused from filing a Screening Certificate of Merit pursuant to West Virginia Code § 55-7B-6(c).

3.      **Bivens Claim**:

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates."

Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is

a judicially created damages remedy which is designed to vindicate violations of constitutional rights

---

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, *Roberts v. Gale*, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." *Farley v. Shook*, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In *Johnson v. United States*, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. *Id.* The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." *Id.* at 858.

Unlike the facts in *Johnson*, Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. *See O'Neil v. United States*, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, it appears that the medical staff at FPC Alderson evaluated and provided treatment to Plaintiff based upon her complaints of a rash with extreme itching and burning. Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FPC Alderson fell below the applicable standard of care and that Plaintiff suffered "permanent burns" as a result of their negligence. The undersigned finds that the symptoms of candidiasis and tineacorporis, the appropriate treatment options, and the possible side-effects or allergic reaction to medications, are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c).

by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[9] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or

_____

[9] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114

S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold

v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

    **A.**    **Defendant Blankenship is entitled to absolute immunity.**

In her Complaint, Plaintiff alleges that Defendant Blankenship improperly treated her skin

rash, which caused "permanent burns" to her body. (Document No. 1-1.) Defendant Blankenship

argues that he is a United States Public Health Service employee and therefore is entitled to absolute

immunity. (Document Nos. 29 and 30.) In support, Defendant Blankenship attaches the Declaration

of Sharon Wahl, the Paralegal for Beckley Consolidated Legal Center. (Document No. 41-2.) In her

Declaration, Ms. Wahl states as follows:

> 10.    Defendant James Blankenship was the FPC Alderson Health Services Administrator from March 2005 until July 2008.
>
> 11.    Mr. Blankenship was, at all times relevant to this Complaint, a Commissioned Officer in the United States Public Health Service ("PHS").
>
> 12.    As of December 2009, he had been a Commissioner Officer in the PHS since 1998, with no lapse in service.

(Id.)

In Response, Plaintiff appears to contend that Defendant Blankenship is not entitled to

absolute immunity because he was "directly involved in Ms. Williams' medical treatment."

(Document No. 34, p. 2.)

Title 42 U.S.C. § 233(a) provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-

> matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. Recently, the United States Supreme Court held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment."[10] Hui v. Castaneda, ___ U.S. ___, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Blankenship held the position of Health Services Administrator. Thus, Plaintiff alleges that Defendant Blankenship is responsible for failing to provide appropriate medical care. Defendant Blankenship was clearly acting within the scope of his employment when performing functions pertinent to his position, such as providing medical care to Plaintiff. Based on the foregoing, the Court finds that Defendant Blankenship was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care he provided to Plaintiff.

**B.      No evidence of deliberate indifference.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing,

---

[10]   Plaintiff's argument that naming Defendant Rowe as a defendant in his official and individual capacity prevents him from claiming absolute immunity is without merit. Under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. In *Hui*, the Supreme Court held that immunity provided by § 233(a) precludes *Bivens* actions against individual Public Health Service officers and employees.

shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*,

we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be

'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A

medical need serious enough to give rise to an Eighth Amendment claim involves a condition which

places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or

a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the

applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to
> a serious medical need, the treatment must be so grossly incompetent, inadequate or
> excessive as to shock the conscience or to be intolerable to fundamental fairness. *
> * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were

aware that inmate's condition had worsened and was life-threatening and intentionally ignored the

situation and refused to seek medical assistance provided a reasonable basis for finding deliberate

indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert.

denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay

in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his

serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for

defendants affirmed where claim that inmate received constitutionally inadequate medical treatment

involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first

allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and

resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his

Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference,

Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. <u>See</u> <u>Farmer</u>, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. It is well established that a private physician under contract with a State to provide medical services to inmates acts under color of State law when treating them and may therefore be held liable under Section 1983. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988); <u>Conner v. Donnelly</u>, 42 F.3d 220, 225 (4th Cir. 1994) ("If a physician treating a prisoner – whether by contract or referral – misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.") Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

Plaintiff alleges that Defendants acted with deliberate indifference in diagnosing and providing medical treatment for her rash from April, 2008, through May, 2008. (Document No. 1-1.) On April 17, 2008, Plaintiff reported to sick-call complaining of a rash on her chest and neck. (Document No. 31-1, p. 35.) On the same day, Plaintiff was evaluated by a nurse practitioner and Defendant McMillion who diagnosed Plaintiff with candidiasis and prescribed Clotrimazole cream and Betamethasone. (<u>Id.</u>, p. 36.) Plaintiff returned to sick-call on April 21, 2008, complaining of "infection all over my body." (<u>Id.</u>, p. 33.) Plaintiff was evaluated by a Physician Assistant and Defendant McMillion, who diagnosed Plaintiff with "dermatitis-candidial," gave Plaintiff a Benadryl injection, and prescribed Lotrisone cream and Betamethasone cream. (<u>Id.</u>, p. 34.) On April 28, 2008, Plaintiff reported to sick-call complaining of a "bacterial infection that had an allegoric reaction all

over my whole body." (Id., p. 31.) Plaintiff was examined by Defendant McMillion, who noted that the rash had spread. (Id.) On the same day, Plaintiff was evaluated by Defendant Rehberg. (Id., p. 32.) Defendant Rehberg diagnosed Plaintiff with tinaecorporis (a fungal infection) and prescribed selenium sulfide lotion. (Id.)

On May 1, 2008, Plaintiff complained of a rash on her legs. (Id., p. 28.) Plaintiff was evaluated by a registered nurse, who noted there was excoriation and swelling to the inner thighs. (Id.) The registered nurse noted no signs of infection or drainage. (Id.) Plaintiff was provided non-adherent sterile dressing to protect the skin and instructed to return to sick-call the next day. (Id.) On May 2, 2008, Defendant Rehberg evaluated Plaintiff noting that her "skin looks better" and no pain or itching with dressing. (Id., p. 29.) Defendant Rehberg noted there still excoriation to inner thighs and instructed Plaintiff to apply dressing after absorption of cream, change the dressing daily, and keep skin-to-skin contact to a minimum. (Id.) On May 5, 2008, Plaintiff reported to sick-call complaining that "I'm out of my medication" and "I'm taking the wrong medication instead." (Id., p. 27.) The next day, Defendant Renick made an administrative note for Plaintiff to stop the Betamethasone. (Id., p. 26.) On May 9, 2008, Defendant Rehberg evaluated Plaintiff noting that her condition had improved with treatment. (Id.) Plaintiff was instructed to continue treatment for one more week by applying daily dressings. (Id.) On May 29, 2008, Plaintiff was seen by a nurse practitioner for a follow-up appointment. (Id., p. 24.) It was noted that Plaintiff's "skin has improved significantly," but she still complains of itching under her breasts and on her legs. (Id.) Plaintiff was prescribed Clotrimazole cream and instructed to "keep the areas dry, frequently change her bra, washing bra frequently, [and] dry areas with hair dryer after bathing." (Id.) On June 24, 2008, Plaintiff was seen at the Chronic Care Clinic and it was noted that Plaintiff's rash had resolved. (Id., pp. 20 - 21.) Plaintiff made no further complains regarding a rash or skin issues. (Id., p. 5.)

For purposes of considering Defendants' Motion, the undersigned will assume that Plaintiff's medical condition was serious enough to give rise to an Eighth Amendment claim. Plaintiff, however, cannot satisfy the subjective component. The Court finds that Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's rash. The record reveals that Defendants evaluated Plaintiff and provided treatment following each sick-call request. During the two-month period, Defendants consistently evaluated Plaintiff's condition, prescribed medication, and issued medical convalescence. Plaintiff contends Defendants were deliberately indifferent in by mis-diagnosing her condition and prescribing medication that caused "permanent burns" to her body. In Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998), the Fourth Circuit dismissed a similar argument by the plaintiff and concluded that an incorrect diagnosis does not establish deliberate indifference. The Fourth Circuit stated as follows:

> Johnson argues that his symptoms -especially acromegaly- so obviously pointed to a pituitary tumor that the doctors were deliberately indifferent in treating Johnson for his symptoms without diagnosing his pituitary tumor. With this argument, Johnson would have us address the question of how obvious a condition must be before a doctor is deliberately indifferent in not diagnosing it. This question, however, misses the mark. The correct question is whether the doctor subjectively "knows of" the serious medical condition itself, not the symptoms of the serious medical condition. The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Thus, consciousness of a risk of serious harm is required.

Id. at 168(internal citations and quotations omitted). Similar to Johnson, there is no evidence that Defendants knew that the rash or the prescribed medication was causing "permanent burns" to Plaintiff's body and deliberately disregarded or failed to treat Plaintiff. The record reveals that Defendants made sufficient efforts to diagnose and treat Plaintiff's symptoms. At most, Defendants may have been negligent in properly diagnosing or prescribing appropriate medication for Plaintiff's condition. It is well recognized that "negligent medical diagnoses or treatment, without more, do not

constitute deliberate indifference." <u>Webb v. Hamidullah</u>, 281 Fed.Appx. 159, 166 (4th Cir. 2008); <u>also see</u> <u>Sosebee v. Murphy</u>, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Finally, an inmate's disagreement with her medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." <u>Malcomb v. Raja</u>, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Accordingly, the undersigned finds that Defendants did not act with deliberate indifference in diagnosing and providing medical treatment for Plaintiff's rash.[11]

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' "Motion to Dismiss Defendants Warden Amber Nelson, Neal Rehberg, D.O., Dana Renick, PA-C, Alice Lowe and James Allen Blankenship and Substitute the United States" (Document No. 20.), **GRANT** the United States' "Motion to Dismiss for Failure to State a Claim" (Document No. 23.), **GRANT** the United States' "Motion to Dismiss James Blankenship and/or for Summary Judgment" (Document No. 29.), **GRANT** "Defendants Nelson, Lowe, Rehberg, and Renick's Motion

---

[11]   The undersigned finds it unnecessary to address the remaining issues that Defendants have presented for dismissal of Plaintiff's claim.

to Dismiss and/or for Summary Judgment" (Document No. 31.), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 1-1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and counsel of record.

Date: June 6, 2012.

R. Clarke VanDervort
United States Magistrate Judge

29